IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KELSEY BRENNAN; KYLE COLEMAN; CARYN FRANKENFIELD; FRANK GALLINE; JOHN A. JOHNSTON; DAWN SNYDER; FREDERICK WAFF; CORY GERYAK; and SARA RINEY, individually and on behalf of similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>SUMMER WWK LLC; HL WOODS, also known as HOWARD WOODS; and CHERELL GEORGE,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:21-CV-0423-MHC |

## ORDER

This matter is before the Court on Plaintiffs' Motion for Costs of Service Against Defendant HL Woods ("Pls.' Mot.") [Doc. 30].

## I.    BACKGROUND

On January 27, 2021, Plaintiffs filed a Collective Action Complaint under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., to recover for uncompensated work they allegedly performed on the production of a motion picture entitled, "Summer When We Were Kings," of which Defendant HL Woods, also known as Howard Woods ("Woods"), was Executive Producer. Compl. [Doc. 1] ¶¶ 1, 14, 48-59.[1]  On January 28, 2021, Plaintiff's counsel, Michael Schoenfeld ("Schoenfeld"), both mailed and emailed Woods a copy of the Complaint and a Notice of Lawsuit and Request for Waiver of Service.  Decl. of Michael B. Schoenfeld ("Schoenfeld Decl.") (July 9, 2021) [Doc. 30-1] ¶¶ 2-3.  On February 2, 2021, Woods emailed Schoenfeld stating, "I have received your email and I'm in the process of retaining attorney."  Email from HL [Woods] to Michael Schoenfeld (Feb. 2, 2021) [Doc. 30-1 at 57].  After failing to receive a signed waiver of service, Schoenfeld sent follow-up emails to Woods on March 1 and March 8, 2021.  Emails from Michael Schoenfeld to HL [Woods] (Mar. 1, 2021, and Mar. 8, 2021) [Doc. 30-1 at 55-56].

---

[1] The Complaint also alleges state law claims for unjust enrichment and breach of contract.  Compl. ¶¶ 60-69.

2

A summons to Woods was issued by the Clerk on March 24, 2021. Summons in a Civil Action [Doc. 9]. Because of the difficulty in locating Woods's residence address, Schoenfeld hired a private investigator and process server to locate and personally serve Woods. Schoenfeld Decl. ¶ 11. The process server made numerous attempts to conduct surveillance at Woods's United Parcel Service mailbox and Woods's father's residence between April 1-April 22, 2021, but could not locate Woods. Process Server's Aff. of Non-Service [Doc. 30-1 at 60-63].

On April 23, 2021, Schoenfeld emailed Woods again to ask where he could be served with the summons and Complaint, stating that "[i]f you continue to ignore my communications, we will ask the Court to serve you by publication, and will ask the Court to require you to pay the expenses of making service." Email from Michael Schoenfeld to HL [Woods] (Apr. 23, 2021) [Doc. 30-1 at 54]. On April 26, 2021, Woods emailed back, "Hello I'm currently retaining counsel, he will be responding to you this week in few days." Email from HL [Woods] to Michael Schoenfeld (Apr. 26, 2021) [Doc. 30-1 at 54]. On April 29, 2021, Woods sent Schoenfeld another email stating, "I have hired attorney he has file and is in review. He will be reaching out to you shortly. He has your information." Email from HL [Woods] to Michael Schoenfeld (Apr. 29, 2021) [Doc. 30-1 at 53-54].

Schoenfeld then asked Woods for the name and contact information of the attorney, and Woods responded with "Chandler law" and "Chandler and Chandler" without providing any contact information. Email from HL [Woods] to Michael Schoenfeld (May 2, 2021, and May 6, 2021) [Doc. 30-1 at 53].

Schoenfeld located the contact information for Zeb Chandler of Chandler Law, who initially said that he had not yet been retained by Woods and then sent an email saying, "I have declined to represent Mr. HL Woods." Schoenfeld Decl. ¶ 16; Email from Zeb Chandler to Michael Schoenfeld (May 10, 2021) [Doc. 30-1 at 65]. Later that day on May 10, 2021, Woods telephoned Schoenfeld and indicated he was prepared to accept service some 102 days after the initial request for waiver; the process server arranged to meet Woods and finally served him with the summons and Complaint. Schoenfeld Decl. ¶ 17.

Recon Management Group, LLC, the investigator and process server, charged a total of $2,061.50 for the costs of surveillance, attempted service, and personal service upon Woods. Invoices, Recon Mgmt. Grp, LLC (Apr. 28, 2021, and May 28, 2021) [Doc. 30-1 at 67, 69]. Plaintiffs seek to recover those costs as well as $2,012.50 in attorneys' fees for researching and drafting the Motion for Costs and the Schoenfeld Declaration. Schoenfeld Decl. ¶¶ 20-25.

## II.   LEGAL STANDARD

Rule 4(d)(1) of the Federal Rules of Civil Procedure provide that "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons." FED. R. CIV. P. 4(d)(1).

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
>
> (A) the expenses later incurred in making service; and
>
> (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

FED. R. CIV. P. 4(d)(2).

Reimbursement under Rule 4(d)(2) is appropriate only when a defendant does not have good cause for refusing to waive service. "A defendant failing to comply with a request for waiver shall be given an opportunity to show good cause for the failure, but sufficient cause should be rare." FED. R. CIV. P. 4, 1993 Advisory Committee Notes. Good cause may exist when "the defendant did not receive the request or was insufficiently literate in English to understand it." Id. But a defendant's belief that "the claim is unjust" or that "the court lacks jurisdiction" does not constitute good cause. Id.

## III. DISCUSSION

The Court finds that Plaintiffs have complied with the requirements of Rule 4(d)(1) of the Federal Rules of Civil Procedure. Woods does not oppose an award of costs of $2,061.50 assessed by Recon Management Group, LLC for surveillance, attempted service, and personal service of Woods. Def. HL Woods's Resp. in Partial Opp'n to Pls.' Mot. ("Woods's Opp'n") [Doc. 34]. The Court finds that the totality of these costs are supported by the Declaration of Michael Schoenfeld and the Invoices submitted by Recon Management Group, LLC.

Woods opposes the request for attorney's fees for the filing of the motion for costs based on two arguments: (1) Plaintiffs have failed to show that the filing of the motion was "required" to recover the costs of service because there was no showing that a refusal of a prior request for those costs occurred, and (2) there is a lack of support for the requested amount of attorney's fees. Woods's Opp'n at 2-3.

It is noteworthy that Woods fails to argue that there was good cause for refusing to waive service. Woods offers no explanation at all as to why he did not waive service. And he offers no legal authority for his proposition that Plaintiff is required to make a demand upon a defendant prior to filing a motion under Rule 4(d)(2). Indeed, given Woods's continual efforts to avoid service in this case, it would seem contrary to the purpose of Rule 4(d)(2) to impose a prerequisite of

making yet another "demand" upon a recalcitrant defendant before filing a motion for which the rule mandates an award of costs and attorney's fees for filing the motion.

With respect to the reasonableness of the request for attorney's fees, a district court must calculate what the Supreme Court has labeled the "lodestar" amount. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) ("[T]he lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.") (quoting City of Burlington v. Dague, 505 U.S. 557, 562 (1992)). The method for determining this amount has been clearly established in the Eleventh Circuit:

> In calculating a reasonable award of attorneys' fees, a district court must first calculate the "lodestar" amount—the number of hours reasonably expended multiplied by a reasonable hourly rate. Am. Civil Liberties Union v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). A reasonable hourly rate is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994) (quotation omitted) (awarding attorneys' fees pursuant to 42 U.S.C. § 1988). The district court is "itself an expert" on the reasonableness of hourly rates and "may consider its own knowledge and experience" on the topic. Id. (quotation omitted). Further, the fee applicant must provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity. Barnes, 168 F.3d at 427. In addition, a "well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." Id. (quotation omitted).

7

Dial HD, Inc. v. ClearOne Commc'ns Inc., 536 F. App'x 927, 930-31 (11th Cir. 2013). "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." Assoc. of Disabled Americans v. Neptune Designs, Inc., 469 F.3d 1357, 1359 (11th Cir. 2006) (citation and footnote omitted). "Similarly, those parties opposing fee applications have obligations," namely that "[t]heir objections and proof concerning hours they want excluded must be specific and 'reasonably precise.'" Yule v. Jones, 766 F. Supp. 2d 1333, 1341 (N.D. Ga. 2010) (quoting Hensley, 461 U.S. at 428).

Woods contends that Plaintiffs have failed to produce evidence supporting Schoenfeld's hourly rate of $350.00.[2] Woods's Opp'n at 3. In seeking attorney's

---

[2] Woods points out that Schoenfeld has a discounted hourly rate of $170.00 with the International Alliance of Theatrical Stage Employees, Local 479, suggesting that he should not be awarded a rate in excess of that discounted rate. Woods's Opp'n at 3; see also Schoenfeld Decl. ¶ 24. However, counsel should not necessarily be denied the opportunity to recover fees at a higher rate than a rate discounted for a repeat client, particularly when the requested rate is within the prevailing market rate. See Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1337 (11th Cir. 2001) (concluding that the district court did not err in awarding an hourly rate in excess of contractual rate between client and counsel); Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1300 (11th Cir. 1988) ("For example, it is not unusual for a law firm representing a governmental entity on an ongoing basis to charge substantially lower hourly rates than would be charged for representation in a single case.").

fees, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984) (emphasis added); see also St. Claire v. Trauner, Cohen & Thomas, L.L.P., No. CIV.A. 107CV2082-ODE, 2008 WL 151542, at *1 (N.D. Ga. Jan. 11, 2008) ("The burden of proof [in seeking attorneys' fees] lies with the applicant, and more is required than the affidavit of the attorney performing the work. Evidence of rates actually billed and paid in similar lawsuits, direct evidence of charges by lawyers under similar circumstances, or opinion evidence are examples of sufficient proof.") (citing Norman, 836 F.2d 1292, 1299 (11th Cir. 1988)).

Although Schoenfeld does not produce opinion evidence of the rates billed and paid in similar lawsuits, he does cite to other cases in which hourly rates by this Court have been awarded in the range he requests. See Pls.' Mot. at 10-11. Moreover, "the court can rely upon its own experience to determine a reasonable fee even when faced with an inadequate fee application or fee rates which seem excessive, and the court should still award a fee where warranted." Feliciano et. al. v. Wehunt, No. 1:09-CV-03130-JOF, 2010 WL 1565493, at *3 (N.D. Ga. Apr. 19, 2010) (citing Norman, 836 F.2d at 1303). The Court finds that an hourly rate of

9

$350.00 is reasonable. See Chattman v. Alpha Receivables, Inc., No. 1:09-CV-1525-GET-ECS, 2010 WL 11647398, at *3 (N.D. Ga. Jan. 13, 2010) (finding that an hourly rate of $300.00 was reasonable for an award of attorney's fees in the Atlanta, Georgia area for a motion filed under Rule 4(d)(2) in 2010).

With respect to documenting the appropriate number of hours spent on a case, the Eleventh Circuit has stated that counsel for the prevailing party

> should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity. . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

Barnes, 168 F.3d at 427 (quoting Norman, 836 F.2d at 1303). And the Court must bear in mind "that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed . . . not the least time in which it might theoretically have been done." Norman, 836 F.2d at 1306. In opposing the number of hours claimed, defendants have an obligation to make specific and "reasonably precise" objections and proof concerning hours they want excluded from any award. Yule v. Jones, 766 F. Supp. 2d 1333, 1341 (N.D. Ga. 2010) (citing Hensley v. Eckerhart, 461 U.S. 424, 428 (1983)).

Woods makes no specific objections to the number of hours claimed. Schoenfeld states that he spent 5.75 hours researching and drafting the Motion for Costs of Service and preparing his affidavit, which this Court finds reasonable. Consequently, the Court awards Plaintiff a total of $2,012.20 in attorney's fees (5.75 hours at $375.00 per hour).

### IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Plaintiffs' Motion for Costs of Service Against Defendant HL Woods [Doc. 30] is **GRANTED**. This Court **AWARDS** Plaintiff a total of $4,074.00 against Defendant HL Woods under Rule 4(d)(2) of the Federal Rules of Civil Procedure, comprised of expenses incurred in making service ($2,061.50) and reasonable expenses required to collect those service expenses ($2,012.50). This amount shall be paid within thirty (30) days of the date of this Order.

**IT IS SO ORDERED** this 17th day of August, 2021.

_____
MARK H. COHEN
United States District Judge

11